PD-1282-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/28/2015 12:00:00 AM
Accepted 9/30/2015 1:19:11 PM
ABEL ACOSTA
CLERK

NO. _____

In the
## COURT OF CRIMINAL APPEALS
of Texas
Austin, Texas

---

**ISIDRO REYNA,**
Petitioner

**VS.**

**THE STATE OF TEXAS,**
Respondent

---

# PETITION FOR DISCRETIONARY REVIEW

**Seeking review of the Fifth Court of Appeals' judgment and opinion in cause no. 05-14-00973-CR**

---

**On appeal from Cause No. F11-62933-Q
from the 204th Judicial District Court of
Dallas County, Texas**

---

**Catherine Clare Bernhard**
**P.O. Box 2817**
**Red Oak, Texas 75154**
**972-617-5548**
**fax – 972-421-1604**
**cbernhard@sbcglobal.net**
**State Bar No. 02216575**

**ATTORNEY FOR PETITIONER**

FILED IN
COURT OF CRIMINAL APPEALS

September 30, 2015

ABEL ACOSTA, CLERK

i

## IDENTITY OF PARTIES AND COUNSEL

Trail Judge:
    Hon. John Nelms
    Visiting Judge
    Dallas County, Texas

For Appellant, Isidro Reyna:

    Appellate counsel:
        Catherine Clare Bernhard
        State Bar No. 02216575
        P.O. Box 2817
        Red Oak, Texas 75154
        972-617-5548
        fax – 972-421-1604
        cbernhard@sbcglobal.net

    Trial counsel:
        William Rink
        State Bar No. 16935825
        1520 N. Beckley Ave., #732
        Dallas, Texas 75203-1070
        469-223-2443

For Appellee, State of Texas:

Appellate counsel:
Michael J. Sandlin
State Bar No. 17621503
Dallas County District Attorney's Office
133 N. Riverfront Blvd., LB 19
Dallas, Texas 75207
214-653-3625

Trial Counsel:
Summer Elmazi
State Bar No. 24042652
Dallas County District Attorney's Office
133 N. Riverfront Blvd., LB 19
Dallas, Texas 75207
214-653-3600

Shequitta D. Kelly
State Bar No. 24068441
Dallas County District Attorney's Office
133 N. Riverfront Blvd., LB 19
Dallas, Texas 75207
214-653-3600

# TABLE OF CONTENTS

Identity of parties and counsel………………………………………...ii

Index of Authorities....................................................................v

Statement Regarding Oral Argument……………………………….1

Statement of the Case................................................................1

Statement of Procedural History.................................................1

Ground for Review......................................................................2
    THE COURT OF APPEALS ERRED IN FINDING THAT
    THE ADMISSION OF TESTIMONY FROM TWO EXPERTS
    THAT THEY OBSERVED NO "RED FLAGS" IN
    COMPLAINANT'S TESTIMONY WAS HARMLESS.

Argument....................................................................................2

Prayer for Relief.........................................................................5

Certificate of Service..................................................................6

Certificate of Compliance with Rule 9.4……………………………7

Appendix....................................................................................8

# INDEX OF AUTHORITIES

**Cases**

Isidro Reyna v. State, No. 05-14-00973-CR (Tex. App. – Dallas, August, 10, 2015)(pet. filed)(not designated for publication)......................................... 2

Sandoval v. State, 409 S.W.3d 259 (Tex. App. – Austin, no pet.)................. 3

**Rules**

Tex. R. App. P. 44.2(b).............................................................................. 2, 3

Tex. R. App. P. 66.3(f) ................................................................................. 5

Tex. R. App. P. 68…………………………………………...………………1

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW Isidro Reyna, Petitioner, by and through his attorney, Catherine Clare Bernhard, and pursuant Rule 68 of the Texas Rules of Appellate Procedure, moves this Court to grant discretionary review, and in support will show the following:

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner does not request oral argument in this case.

## STATEMENT OF THE CASE

Isidro Reyna was charged with Continuous Sexual Abuse of a Child. (C.R. at 11). A jury found him guilty as charged and assessed his punishment at 28 years in the penitentiary. (C.R. at 112; VII R.R. at 38; VII R.R. at 60). This is an appeal from that judgment.

## STATEMENT OF PROCEDURAL HISTORY

Petitioner complained on appeal that the trial court improperly admitted expert opinions regarding the complainant's credibility. The Fifth Court of Appeals disagreed and affirmed this conviction. Isidro Reyna v. State, No. 05-14-00973-CR (Tex. App. – Dallas, August, 10, 2015)(pet.

filed)(not designated for publication). A motion for rehearing was timely filed on August 24, 2015, and denied on September 8, 2015. Therefore, this petition is timely filed if filed by Oct. 8, 2015.

## GROUND FOR REVIEW

THE COURT OF APPEALS ERRED IN FINDING THAT THE ADMISSION OF TESTIMONY FROM TWO EXPERTS THAT THEY OBSERVED NO "RED FLAGS" IN COMPLAINANT'S TESTIMONY WAS HARMLESS.

During Mr. Reyna's trial, both the forensic interviewer and the detective were allowed to testify, over objection, that they observed no "red flags" in the complainant's story. Without actually reaching the issue of whether this was error, this Court found any error to be harmless under Tex. R. App. P. 44.2(b). It was not.

## ARGUMENT

In this case, the State was permitted to ask two different witnesses, Christine Mack and Det. Daniel Greene, if they observed any "red flags" in the forensic interview of M. A. On both occasions the defense objected to this line of questioning as a comment on the witness' credibility. On both occasions, this objection was overruled and the witnesses were allowed to tell the jury that they saw no "red flags". (V R.R. at 161-162; VI R.R. at 46).

From the context of the questioning, it was clear that the term "red flags" meant a reason to believe that the complainant was not credible.

Without actually reaching the issue of whether this was error, the court of appeals found any error to be harmless under Tex. R. App. P. 44.2(b). It was not.

The critical issue at trial was the credibility of the complainant. The defense had suggested that M.A. fabricated her story because her friend had obtained a puppy and a computer for telling a similar story. The defense argued that M.A.'s testimony about what happened was too vague and imprecise to be credible. (VII R.R. at 23-28). It was in that context that the questions about "red flags" were asked. This testimony from the detective and the forensic interviewer was critical and it came cloaked in an aura of expertise.

In Sandoval v. State, 409 S.W.3d 259 (Tex. App. – Austin, no pet.), the court found similar "red flag" testimony to be inadmissible. In that case, the detective had testified, over objection, that there were no "red flags" in the victim's story to indicate that she was "fabricating the story". The court found this was error, but ultimately, found it to be harmless because there had been similar testimony from the forensic interviewer which came in without objection. The court stated:

> We do not hold, or even suggest, that expert opinions are interchangeable such that the admission of one expert's opinion automatically eliminates harm in the erroneous admission of another expert's opinion merely because they opine about the same topic. Our conclusion here is based on the opinion testimony in this case and the expertise of the experts who gave it. Both of these opinions are derived from the same source – [the victim]'s interview ([the detective] reviewed it while [the forensic interviewer] conducted it) – and were similar in nature (both expressing the opinion that [the victim] did not fabricate the allegations). However, we recognize that though similar in nature, these opinions are still distinguishable based on areas of expertise. [The detective]'s opinion was based on his generalized expertise as a law enforcement officer, whereas [the forensic interviewer]'s opinion was based on her specialized expertise as a child-abuse expert. The strength of her opinion derives from her expertise in that particularized field and mitigates the harm of the erroneous admission of the detective's more generalized opinion. Had the situation been reversed, we cannot say that we would necessarily have found that the admission, without objection, of [the detective]'s opinion substantially mitigated the harm in an erroneous admission of [the forensic interviewer]'s testimony.

Sandoval at 294 n.24. Thus, the court opined that it might not be harmless if the forensic interviewer's opinion was erroneously admitted, given her specialized expertise.

In this case, both the forensic interviewer, with her specialized expertise, and the detective, with his generalized expertise, testified over objection, about these "red flags" of credibility. Coming from two different experts greatly increases the impact of this improper opinion on the truthfulness of a critical witness in this case. In a case where the victim's

credibility was the primary contested issue at trial, the court erred in finding that the improper admission of this evidence did not influence the jury, or influenced the jury only slightly. This conclusion so far departed from the accepted and usual course of judicial proceedings as to require the granting of this petition for discretionary review. Tex. R. App. P. 66.3(f).

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully prays that this Court grant discretionary review and, after full briefing on the merits, issue an opinion reversing the Court of Appeals' judgment.

Respectfully submitted,

Catherine Clare Bernhard
P. O. Box 2817
Red Oak, Texas 75154
972-617-5548
fax – 972-421-1604
cbernhard@sbcglobal.net
State Bar No. 02216575

ATTORNEY FOR PETITIONER

5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Petition was served through the electronic filing system on Michael Sandlin, Assistant District Attorney for Dallas County at michael.sandlin2@dallascounty.org and the State Prosecuting Attorney at information@spa.texas.gov on September 26, 2015.

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4

I hereby certify that the foregoing petition contains 1, 378 words.

_____

APPENDIX

Court of Appeals Opinion



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00973-CR

**ISIDRO REYNA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1162933-Q**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Brown

Isidro Reyna appeals his conviction for continuous sexual abuse of M.A., a child younger than fourteen years of age. After finding appellant guilty of the charged offense, the jury assessed punishment at twenty-eight years' confinement. In a single issue, appellant claims the trial court abused its discretion by allowing certain evidence. We affirm.

### BACKGROUND

Twelve-year-old M.A. testified she lived with her mother, Julia, several siblings, and Julia's husband, appellant.[1] When M.A.'s friend, F.S., said her uncle was hurting her by trying to touch and kiss her, M.A. revealed that appellant had been doing similar things to M.A.

---

[1] Julia is M.A.'s biological aunt.

According to M.A., when she was seven or eight years old, appellant came up behind her, reached under her shirt, and touched her breasts while she was playing video games on the couch. She told the jury she was about nine years old when he touched her "middle part" with his fingers. She described her "middle part" as where she pees. She said it felt "weird" and hurt when he did it. On another occasion, appellant called from the bathroom and asked her to bring him a towel. When he opened the bathroom door, he did not have any clothes on. He took her hand, "put it on his middle part," and made her "move it up and down." According to M.A., the "white stuff that came out" of his middle part ended up on her face, near her mouth. M.A. could not remember how old she was at that time. She also told the jury that one night, while she was asleep, appellant came in her bedroom and tried to "put his middle part in my butt, but he couldn't." The "white stuff" went on her shorts, underwear, and bed covers. She threw away her underwear the next morning but could not remember what she did with her shorts. On another occasion, appellant tried to put his middle part in her mouth while she was sleeping.

Christine Mack, a forensic interviewer with the Dallas Children's Advocacy Center, was the outcry witness. She began her testimony by detailing her educational background and training; she then described for the jury how a forensic interview is conducted and what types of things the interviewer looks for. She discussed, at length, what red flags are, describing them as indicators of whether something has in fact occurred or whether the child is being told to say it occurred. She indicated red flags would also show whether a child was holding back information or giving full disclosure.

When Mack interviewed M.A., the child made "multiple disclosures of abuse." Mack, who speaks Spanish fluently, interviewed M.A. in Spanish and detailed the incidents for the jury. According to Mack, appellant touched M.A.'s breasts on at least two separate occasions: once by taking her shirt off and the other by placing his hands underneath her shirt. M.A.

demonstrated the rubbing motion he used when touching her breasts. Another time, appellant came up behind her, pulled her pants down "just a little bit," stretched her underwear out, and touched her vagina with his finger. The next incident occurred when M.A. was sleeping; appellant opened her mouth and, grabbing his penis, put it inside her mouth. He then moved his hands forward and backwards until she felt what she called "baba" in her mouth. Mack described "baba" as Spanish for "spit, saliva, slime, [or] something of that nature." M.A. swallowed the "baba," and appellant stopped. Another time, M.A. was sleeping, and appellant came into her room. He pulled down her shorts and underwear, then touched her butt with his penis. M.A. said it "felt like a stick" and she could "feel the baba on her butt." The following morning, she woke and saw the "white crusty stuff" on her shorts and underwear. She threw her shorts in the wash, threw her underwear out, and put on clean clothes. Finally, M.A. told Mack that appellant showed her iPhone videos of naked adults kissing on a bed, telling her that was what "he wanted to do to her."

When asked if she determined whether M.A.'s testimony had red flags, appellant objected on the grounds Mack was being asked to judge whether M.A. was telling the truth and that it was inappropriate. The trial court overruled appellant's objection, after which Mack stated she did not "determine any red flags. And just for clarification, our red flags, we do not make an opinion on the case." When asked to elaborate, Mack said, "[w]e are never going to tell a police officer we think the child is telling the truth or the child's lying."

Sandra Onyinanya is a pediatric nurse practitioner and the sexual assault nurse examiner (SANE) at the REACH Clinic at Children's Medical Center Dallas. She examined M.A. but found no signs of physical trauma. Onyinanya said this was quite common and that 85-95% of the SANE exams were normal. This is due, in large part, to the type of tissue in the vaginal and anal areas and its ability to heal quickly. Onyinanya also noted M.A.'s mother was unsure of

–3–

what had happened and whether to believe M.A. Specifically, her mother said M.A.'s friend, F.S., reported she was sexually abused by her uncle and got gifts from CPS, and that M.A. "now wants the same thing." Onyinanya told her that the majority of the time, "children typically [do not] make up stories about sexual abuse." She further noted that if a child is able to give the detail M.A. did in her forensic interview, "then that was beyond makeup."

At the time of M.A.'s outcry, Detective Daniel Greene was assigned to the Child Abuse Division of the Dallas Police Department and investigated her claims. He requested a forensic interview for M.A. and was present when Mack interviewed her. According to Greene, M.A. said her uncle abused her. When Greene was asked whether he observed any "red flags" in the course of M.A.'s interview, appellant objected that such testimony was an attempt to bolster M.A.'s credibility. The trial court overruled the objection, and Greene testified he did not observe any red flags. The State then asked Greene to define what a red flag was, and appellant again objected and asked for a running objection to "red flag testimony." The trial court overruled the objection and granted appellant a running objection as requested. Greene described a "red flag" as "a statement made by the child or something in the case which would cause us to have concern for the credibility of the child." He then gave several generic examples, including a child using vocabulary inconsistent with the child's age. Greene said that, in light of M.A.'s statements, he obtained a warrant for appellant's arrest, as well as a search warrant for the family home.

Greene arrested appellant and read him his *Miranda* rights. He then interviewed appellant, who initially denied M.A.'s allegations, but later admitted touching M.A.'s "vagina over her clothing at least five times." He also admitted it happened over a period of several months and that "[m]ost of the time it was over her clothes." When Greene asked appellant if M.A. initiated the conduct, appellant responded, "No. Never can a girl that age start something

–4–

like that." Appellant also admitted having an obsession with pornography but said he did not show pornographic materials to M.A. He also denied any other sexual abuse occurred and specifically denied penetrating M.A. or putting his penis in her mouth. Greene said that, in his experience with people suspected of sexual abuse, "they hold back" information and "minimize their culpability." Greene also told the jury he seized the bed covers on M.A.'s bed as well as appellant's iPhone, but no physical evidence was found.

After hearing this and other evidence, the jury found appellant guilty of continuous sexual abuse of a child younger than fourteen years of age. This appeal followed.

## ADMISSION OF EVIDENCE

In his sole issue, appellant claims the trial court erred by allowing Mack and Greene to testify whether they detected "red flags" during M.A.'s interview which, he contends, commented on M.A.'s credibility. He claims his substantial rights were affected and we must reverse his conviction.

Although we review a trial court's decision to admit or exclude evidence under an abuse of discretion standard, *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010), we conclude we need not address whether the admission of the complained of testimony in this case was an abuse of discretion because, even if it were, appellant has not shown reversible error. The wrongful admission of evidence constitutes non-constitutional error, and we must disregard it unless it affected appellant's "substantial rights." TEX. R. APP. P. 44.2(b). An error affected a substantial right "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Despite non-constitutional error, we affirm a criminal conviction if, after examining the record as a whole, we are left with the fair assurance that the error did not influence the jury or influenced the jury only slightly. *Morales v.*

*State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).  We analyze the entire record to determine if the trial court's error had no or only a slight effect on the jury's decision.  *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Wilson v. State*, 90 S.W.3d 391, 393 (Tex. App.—Dallas 2002, no pet.).  We consider all the evidence, the nature of the evidence supporting the verdict, and the character of the error and its relationship to other evidence, as well as the trial court's instructions to the jury and the parties' closing arguments, to determine if the error substantially affected appellant's rights.  *Wilson*, 90 S.W.3d at 393.

The record reflects M.A. testified at trial and gave specific, sensory detail that, beginning when she was eight years old and ending several months later when she was nine years old, appellant touched her breasts and vagina on several occasions, placed his penis in her mouth and on her butt, and that on one occasion, he made her grab his penis until he ejaculated.  Appellant admitted he touched M.A.'s vagina at least five times and, although he initially said all the touching was "over her clothes," he later said it was over her clothes "most of the time."  During closing arguments, the State focused on M.A.'s in-court statement as well as appellant's video-taped statement to Greene.  No mention was made of red flags or whether or not Greene or Mack thought M.A. was telling the truth.

Considering the record as a whole, including all the evidence presented, the nature of the evidence supporting the verdict, the character of the asserted error and its relationship to other evidence, the instructions of the court, and closing argument, we are left with the fair assurance that the trial court's error, if any, did not influence the jury or influenced the jury only slightly.  *See id.*  We therefore disregard the trial court's non-constitutional error, if any, as harmless.  *See* TEX. R. APP. P. 44.2(b).  We overrule appellant's sole issue.

We affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

140973F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ISIDRO REYNA, Appellant

No. 05-14-00973-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F11-62933-Q.
Opinion delivered by Justice Brown, Justices Bridges and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 10th day of August, 2015.